# Exhibit A

## COUNTERCLAIMS AGAINST PLAINTIFFS RADIX, HEAVEN and SAM

Counterclaim Plaintiffs United Better World Solutions LLC and Ricardo Black (hereinafter collectively referred to as the "Counterclaim Plaintiffs") complaint as to the Counterclaim Defendants Cheryl Radix ("Radix"), Audra Heaven ("Heaven"), and Achebe Sam ("Sam")(also hereinafter collectively referred to as the ("Counterclaim Defendants"):

### Counterclaim and Second Third-Party Complaint Parties

279. Counterclaim Plaintiff Ricardo Black is a resident of the State of New York.

280. Counterclaim Plaintiff Ultimate Better World Solutions is a domestic limited liability corporation organized and authorized to conduct business in the State of New York since 2014.

281. Counterclaim Defendant Radix is a resident in the Commonwealth of Virginia.

282. Counterclaim Defendant Heaven is a resident in the State of New York.

283. Counterclaim Defendant Sam is a resident in the State of New York.

### Jurisdictional Statement

284. The Court has jurisdiction over the subject matter of this action pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c), as well as pendent and/or supplemental jurisdiction over the Counterclaim Plaintiffs' common law claims pursuant to 28 U.S.C. § 1367.

285. Venue is proper pursuant because many of the acts and transactions giving rise to the violations of law alleged in these Counterclaims occurred in this District.

**Background Facts Related To Counterclaims**

A.  **Counterclaim Defendants as Promoters Of Kensington International Inc.**

286. Counterclaim Defendant Radix entered in an Independent Marketing Representative ("IMR") Agreement with Kensington International Inc. on September 17, 2018.

287. Counterclaim Defendant Radix was referred to Kensington International Inc. by non-party Hasani Henry.

288. The IMR Agreement authorized Counterclaim Defendant Radix to market Kensington International Inc. products and programs.

289. Counterclaim Defendant Radix agreed to explain Kensington International, Inc.'s programs honestly and in entirety without embellishment, distortion or misrepresentation.

290. Pursuant to the terms of the IMR Agreement, Counterclaim Defendant Radix was paid a commission depending on the number of investors that said Counterclaim Defendant was able to get to enroll in the Wealth Through Partnership Program.

291. Counterclaim Defendant Heaven entered in an Independent Marketing Representative ("IMR") Agreement with Kensington International Inc. on July 24, 2018.

292. Counterclaim Defendant Heaven was referred to Kensington International Inc. by non-party Petula Hamilton.

293. The IMR Agreement authorized Counterclaim Defendant Heaven to market Kensington International Inc. products and programs.

294. Counterclaim Defendant Heaven agreed to explain Kensington International, Inc.'s programs honestly and in entirety without embellishment, distortion or misrepresentation.

Case 1:22-cv-06632-FB-RML    Document 15-1    Filed 05/08/23    Page 63 of 72 PageID #: 325

295. Pursuant to the terms of the IMR Agreement, Counterclaim Defendant Heaven was paid a commission depending on the number of investors that said Counterclaim Defendant was able to get to enroll in the Wealth Through Partnership Program

296. Counterclaim Defendant Sam entered in an Independent Marketing Representative ("IMR") Agreement with Kensington International Inc. on October 4, 2018.

297. Counterclaim Defendant Sam was referred to Kensington International Inc. by Counterclaim Defendant Radix.

298. Based upon recommendations made by Counterclaim Defendant Radix, Counterclaim Defendant Sam invested in Kensington International, Inc.

299. The IMR Agreement authorized Counterclaim Defendant Sam to market Kensington International Inc. products and programs.

300. Counterclaim Defendant Sam agreed to explain Kensington International, Inc.'s programs honestly and in entirety without embellishment, distortion or misrepresentation.

301. Pursuant to the terms of the IMR Agreement, Counterclaim Defendant Sam was paid a commission depending on the number of investors that said Counterclaim Defendant was able to get to enroll in the Wealth Through Partnership Program.

### B. Counterclaim Defendants Provided Misrepresentations About Kensington International, Inc. To Prospective Investors

302. In the interest of brevity, the Counterclaim Plaintiffs UBWS incorporate by reference into the counterclaims, the allegations set forth in paragraphs 42-155 of Plaintiffs' Complaint (**Exhibit "A"** without attachments) into the Counterclaims.

303. Upon information and belief, the Counterclaim Defendants and other non-party IMR agents hosted parties in their respective homes for presentations regarding investing in the Wealth Through Partnership Program.

304. The IMR representatives provided marketing brochures regarding Kensington International, Inc.'s program and products to the friends and family members.

305. In addition to providing friends and family with marketing brochures regarding Kensington International, Inc.'s programs and products, the Counterclaim Defendants recommended to friends and family to visit Kensington International Inc's website and social media platforms.

306. The IMR representatives misrepresented the nature of its investment proposition to prospective investors by representing that Kensington International Inc was a well-capitalized institution.

307. The IMRs portrayed investing in Kensington International Inc, as a risk-free yet lucrative opportunity which would result either in a profit from the resale of property, or simple repayment of the loan with an acceptable rate of interest.

308. The IMRs represented to prospective investors that Kensington International, Inc. had adequate backup funds.

309. But the specific falsity in these representations was that Kensington International, Inc. was adequately capitalized and had enough cash on hand to repay its loans from investors.

310. These representations regarding Kensington International, Inc.'s capitalization and its ability to repay prospective investors were materially false or misleading when made. The

statements and omissions concerned the state of Kensington International, Inc. at the time other prospective investors were induced to furnish monies to Kensington International, Inc.

311. The Counterclaim Defendants represented to investors that Kensington International Inc. was already a profitable, established, and financially sound real estate investment firm.

312. The Counterclaim Defendants provided investors with materially false and/or misleading when the statements were made because the Counterclaim Defendants had been doing business for many years and had a track record of profitability and success.

313. In fact, Kensington International, Inc. was not well-established at all because corporate records showed that it had only been incorporated in November of 2017.

314. By and through the brochures that they received, the Counterclaim Defendants further represented that the Kensington International, Inc.'s owners and employes had experience in the investment and real estate industry.

315. For example, the Kensington International, Inc.'s brochures stated that "Our real estate professionals have a combined 50 years of experience in the real estate industry. Our team is comprised of contractors, real estate agents, brokers, seasoned investors, and the combined experience of this group has afforded us intimate and detailed of market trends in the Greater New York Area."

316. The representations in the preceding paragraph were materially false or misleading when made.

317. The Counterclaim Defendants misleadingly omitted that Kensington International Inc.'s team was headed by a convicted criminal fraudster.

318. By the brochure and making reference to various websites, the Counterclaim Defendants further represented to prospective investors that Kensington International, Inc. had a track record of success in earning meaningful returns for investors.

319. The representations made by the Counterclaim Defendants as set forth in the previous paragraph were materially false or misleading when made.

320. As further inducement and assurances to prospective investors, the Counterclaim Defendants advised investors that Kensington International, Inc. offered personal guarantees by its main principals, Defendants John Gelin and Eyan Edwards.

321. In advertising these personal guarantees, the Counterclaim Defendants falsely assured investors that if Kensington International, Inc. was somehow unable to repay its loam from investors, Defendants John Gelin and Eyan Edwards would cover the loans with their own assets, when in fact they did not have both the financial stability and the intention to meet these obligations.

322. These representations and omissions regarding Defendants John Gelin and Eyan Edwards' financial ability and intention to abide by their guarantees were materially false and/or misleading when made.

323. The totality of the circumstances discussed herein and in the Plaintiffs' Complaint permit the reasonable inference that the Counterclaim Defendants persuaded investors to enter

into agreements with Kensington International, Inc. based upon a slew of promises that Kensington International, Inc. did not intend to perform on.

324. One of those investors who relied upon the representations discussed above and in the Plaintiffs' Complaint was Counterclaim Defendant Sam who was recruited by Counterclaim Defendant.

**C.     Counterclaim Defendants Do Not Have Viable Claims Against The Counterclaim Plaintiffs.**

325. The Counterclaim Defendants decided in due course of action to abuse the processes of the federal courts to secure for themselves a judgment against the Counterclaims Plaintiffs that were not based in fact.

326. The Counterclaim Defendants failed to plead sufficient accurate facts about any alleged actions by the Counterclaim Plaintiffs when in fact the Counterclaim Defendants had an integral role in damages sustained by the Plaintiffs, the Counterclaim Defendants and other members of the purported class.

327. The Counterclaim Defendants' claims against the Counterclaim Plaintiffs failed to comply with the pleading requirements pursuant to Fed. R. Civ. P. Rule 8.

**COUNT I**
**(Malicious Prosecution)**

328. Counterclaim Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs marked "279" through "327," inclusive with the same force and effect as if fully set forth herein at length.

329. The Counterclaim Defendants initiated civil procedures against the Counterclaim Plaintiffs.

330. The Counterclaim Defendants in commencing a civil procedure action against the Counterclaim Plaintiffs were acting without probable cause.

331. The civil procedure commenced against the Counterclaim Plaintiffs for alleged RICO violations, fraudulent inducement, breach of contract, breach of fiduciary duty, fraudulent concealment, and equitable accounting.

332. The Counterclaim Defendants acted with malice, that they acted primarily for a purpose other than that of securing the proper adjudication of the claim on which the proceedings are based.

333. The proceedings of the instant lawsuit commenced by the Counterclaim Defendants will ultimately be terminated and decided in favor of the Counterclaim Plaintiffs.

334. The Counterclaim Plaintiffs have been damaged as a result of the frivolous claims alleged by the Counterclaim Defendants because it has to expend its limited resources and monies to defend against these claims and the allegations raised by the Counterclaim Defendants has seriously impeded present and future business activities of the Counterclaim Plaintiffs, as well as tainted its reputation in the industry.

## COUNT II
### (Fraudulent Inducement)

335. Counterclaim Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs marked "279" through "334," inclusive with the same force and effect as if fully set forth herein at length.

336. To induce investors to furnish monies to Kensington International, Inc., the Counterclaim Defendants made several material representations and omissions.

337. These material misrepresentations and omissions were made during house parties, through advertisement of the brochure and websites, as detailed in paragraphs 286-324 above and in Plaintiffs' Complaint.

338. The Counterclaim Defendants were reckless in the publication of these false alleged statements of facts in an attempt to harm the Counterclaim Plaintiffs.

### Count III
### (Breach of Contract)

339. Counterclaim Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs marked "274" through "338," inclusive with the same force and effect as if fully set forth herein at length.

340. The Counterclaim Defendants had entered into IMR Agreements with Kensington International, Inc.

341. The Counterclaim Defendants breached the IMR Agreement by providing material misrepresentations to prospective investors, including to Counterclaim Defendant Sam, about Kensington International, Inc.'s programs.

342. As a direct and proximate result of the Counterclaim Defendants' actions, the Counterclaims Defendants' breach of the IMR Agreements have caused investors to suffer and continue to suffer monetary damages in an amount to be proven at trial.

### Count IV
### (Contribution)

343. Counterclaim Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs marked "274" through "342," inclusive with the same force and effect as if fully set forth herein at length.

344. That although the Defendants/Counterclaim Plaintiffs UBWS have denied the allegations of wrongdoing Plaintiffs assert against them in Plaintiffs' Complaint, should said Defendants/Counterclaim Plaintiffs UBWS be found to be liable to the Plaintiffs and other members of the class action, then such liability shall derive from the active and affirmative wrongdoings of the Counterclaim Defendants Cheryl Radix, Audra Heaven, and Achebe Sam.

345. As a result of the negligence, recklessness, omissions and/or carelessness of the Counterclaim Defendants Cheryl Radix, Audra Heaven, and Achebe Sam, they are solely liable for any and all damages to the Plaintiffs and other members of the class action may have suffered.

346. That, by reason thereof, Defendants/Counterclaim Plaintiffs UBWS are entitled to indemnification and/or contribution from the Counterclaim Defendants Cheryl Radix, Audra Heaven, and Achebe Sam.

**WHEREFORE**, Defendants and Counterclaim Defendants Ultimate Better World Solutions, LLC and Ricardo Black demand judgment against the Plaintiffs and Counterclaim Defendants Cheryl Radix, Audra Heaven, and Achebe Sam:

1. Dismissing the action set forth in the Complaints with costs as to Defendants Ultimate Better World Solutions, LLC and Ricardo Black;

2. compensatory damages against the Counterclaim Defendants, jointly and severally, for all damages sustained by as a result of Counterclaim Defendants' wrongdoing, in an amount to be proven at trial;

3. statutory and/or punitive damages;

4. Reasonable costs and expenses incurred in this action including attorneys' fees and costs; and

5. For such other relief which this Court may deem just and proper.

Dated: New York, New York
May 8, 2023

Yours, etc.

**LAW OFFICE OF DIMITRIOS KOUROUKLIS, PH.D.**

*Dimitrios Kourouklis*

By: _____

Dimitrios Kourouklis (DK 0073)
*Attorneys for Defendants*
*ULTIMATE BETTER WORLD SOLUTIONS, LLC and RICARDO BLACK*
19 West 21st Street, Suite 402
New York, New York 10010
(929) 400-7608

Case 1:22-cv-06632-FB-RML Document 185 Filed 05/08/23 Page 712 of 712 PageID #: 3234